[Cite as *State v. Wharton*, 2015-Ohio-5026.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HOCKING COUNTY

STATE OF OHIO,                                    :

    Plaintiff-Appellee,                       :
                                           Case No. 15CA9

    v.                                            :

                                              DECISION AND
MICHAEL J. WHARTON,                               :    JUDGMENT ENTRY

    Defendant-Appellant.                      :    RELEASED: 11/30/2015

APPEARANCES:

Jorden M. Meadows, Logan, Ohio, for Defendant-Appellant.

Laina Fetherolf, Hocking County Prosecuting Attorney, and William L. Archer, Jr., Hocking County Assistant Prosecuting Attorney, Logan, Ohio, for Plaintiff-Appellee.

Hoover, P.J.

{¶ 1} Michael J. Wharton ("Wharton") appeals the judgment of the Hocking County Court of Common Pleas. Wharton pleaded guilty to one count of telecommunications fraud in violation of R.C. 2913.05(A), a felony of the fifth degree, and one count of identity fraud in violation of R.C. 2913.49(B)(1), a felony of the fifth degree. The trial court accepted Wharton's guilty pleas and sentenced him to twelve months of imprisonment on each count to be served consecutively. The trial court then suspended the sentences and placed Wharton on community control for a term of five years.

{¶ 2} In his sole assignment of error, Wharton argues that the trial court erred by failing to merge the offense of telecommunications fraud with the identity fraud offense. The State of Ohio ("State") instead asserts that the two offenses are not allied offenses of similar import

subject to merger. The State, therefore, argues that the trial court did not err in failing to merge the offenses. For the reasons that follow, we find that the two offenses are not allied offenses of similar import; and therefore, we overrule Wharton's sole assignment of error.

{¶ 3} However, when sentencing Wharton, the trial court imposed prison sentences on each offense but then suspended the prison sentences and ordered community control. Because the trial court imposed a sentence that is contrary to law, we sua sponte vacate Wharton's sentence, reverse, and remand the cause for proceedings consistent with this opinion.

### I. Facts and Procedural Posture

{¶ 4} Wharton was indicted by the Hocking County Grand Jury in August 2014. The indictment contained two counts. Count one was for telecommunications fraud, in violation of R.C. 2913.05(A), a felony of the fifth degree. Count two was for identity fraud, in violation of R.C. 2913.49(B)(1), a felony of the fifth degree. Both counts of the indictment were alleged to have occurred between January 1, 2014 and March 31, 2014, in Hocking County, Ohio. Wharton was arraigned on December 2, 2014, and pleaded not guilty to the charges.

{¶ 5} On January 8, 2015, a pretrial conference was held. The next day, January 9, 2015, a pretrial conference memorandum was filed that memorialized the plea agreement of the parties. The parties agreed that Wharton would change his pleas to guilty on the charges of telecommunications fraud and identity fraud. Wharton had three other cases that were included in the plea agreement that are not the subject of this appeal.[1] With respect to the offenses of telecommunications fraud and identity fraud, Wharton would be sentenced to twelve months

---

[1] The plea agreement included that on a prior case for which Wharton was convicted, 13CR0016, Wharton would admit to a probation violation and serve thirty-six months in the appropriate penal institution. Likewise, on another prior case for which Wharton was convicted, 13CR0055, Wharton would admit to a probation violation and be sentenced to eighteen months; however, Wharton would be considered for judicial release after serving thirty days. With respect to 14CR0169, Wharton would plead guilty to failure to provide change of address and would be sentenced to eighteen months with the sentence suspended.

upon each count, with the issue of merger of the two counts to be considered at the sentencing hearing.

{¶ 6} Wharton then filed a sentencing memorandum on January 29, 2015, arguing that the telecommunications fraud offense and identity fraud offense should merge. The memorandum set forth that Wharton "used the victim's name, date of birth, phone number, and social security number to apply electronically for several personal loans and an auto loan." Wharton cited *State v. Thompson*, 8th Dist. Cuyahoga No. 99628, 2014-Ohio-202, ¶¶ 19-20, as authority for the trial court to merge the two offenses. Wharton argued that the single act of using the victim's identity to apply for the three separate loan applications gave rise to both the telecommunications fraud and the identity fraud charges. The State did not file a response to Wharton's sentencing memorandum.

{¶ 7} On February 3, 2015, the trial court held a hearing in which Wharton changed his pleas from "not guilty" to "guilty" on the telecommunications fraud and the identity fraud charges. Wharton signed a waiver of his constitutional, statutory, and procedural rights. Wharton also waived any factual defenses with respect to the crimes. The trial court informed Wharton of the maximum sentences and fines that he could receive upon each offense; he also acknowledged the fact that the sentences could run consecutively. The trial court accepted Wharton's guilty pleas.

{¶ 8} Prior to sentencing, the parties made their arguments with respect to the merger issue. Wharton argued that the Eighth District case that he submitted to the trial court through his memorandum, *Thompson*, *supra*, was analogous to his case. Wharton argued that:

> [T]he actions that were alleged as telecommunications fraud would not have been
> a crime, but for the identify [sic] fraud, and actions that constituted the identity

fraud would not have been a crime but for the telecommunications fraud. This was a case of taking an identity and using that identity for the purpose of making credit applications. I think those are essentially one act and as such they should merge.

{¶ 9} In response, the State argued the following:

When I indicted this, I took the merger issue into account. Essentially what happened in this case is on three or four different occasions, Mr. Wharton took the victim's identification and applied for I think primarily car loans and this occurred over a couple of month period of time. I agree with Mr. Shepler that for each of the actual applications, those two charges would merge. It is the state's position that because we only brought two charges that they do not merge because we have three or four different separate incidents where Mr. Wharton used the victim's information. And so we are not talking about one event, we are talking about three or four different events and therefore it's a different animus. It's a different credit company and a different time frame * * * and a different place to apply and therefore the animus is not the same, it is a different set of circumstances and erego [sic] if he'd gotten a loan prior, he wouldn't have been doing it again.

* * *

Again, had we had one incident where we were doing both charges, then I would agree and the merger applies based on that Eighth District decision. But here I only charged two different charges, but we have three different incidents and therefore we believe you can do consecutive suspended sentences.

{¶ 10} The trial court decided that the charges of telecommunications fraud and identity fraud did not merge. In doing so, the trial court stated:

> I'm going to find that the charges do not merge and the reason for that is, is that while it was the same victim that they were different events. Here it was obviously it—telecommunications fraud, the facts, number one, let's say—and with a company—and with the accompanying identity fraud and some time later there was another telecommunications fraud with another identity fraud attached to that one and on down the line. How many incidents were there?
>
> [ASSISTANT PROSECUTOR:] Three or four.
>
> [TRIAL COURT:] Three or four. Okay. So it appears that the state's position is that Count I is perhaps that occurred on date X an [sic] then the identity fraud is identity fraud that occurred on—
>
> [ASSISTANT PROSECUTOR:] A later date.
>
> [TRIAL COURT:] On a different date. * * *

{¶ 11} Wharton was sentenced to twelve months in an appropriate penal institution on each count with the sentences to be served consecutively to one another. The trial court suspended the sentences and placed Wharton on community control under the supervision of the Adult Parole Authority for a term of five years. The community control sanction was tolled until such time that Wharton would be released from incarceration in a separate case. Wharton was ordered to use no alcohol or illegal drugs whatsoever; and the trial court ordered Wharton to have no contact with Ernest Stewart, the victim in this matter. The trial court did not issue a fine nor did it order restitution. It is from this conviction and sentence that Wharton appeals.

## II. Assignment of Error

{¶ 12}  Wharton raises the following sole assignment of error for review:

The trial court erred by failing to merge count one, a violation of ORC 2913.05(A), TITLED TELECOMMUNIATIONS FRAUD with count two, a violation of ORC 2913.49(B)(1), IDENTITY FRAUD at sentencing.

### III. Law and Analysis

### A. Merger Analysis

{¶ 13} For his sole assignment of error, Wharton contends that the trial court erred by failing to merge the telecommunications fraud offense in count one and the identity fraud offense in count two for purposes of sentencing. In his appellate brief, Wharton claims that the trial court implicitly concluded that the offenses of identity fraud and telecommunications fraud are allied offenses of similar import. Wharton points out that the trial court noted that there was one victim of the offenses and no separate harm was attributed to any one incident. Wharton states that the harm to the victim was "the anxiety over getting repeated phone calls from the credit companies." Wharton further argues that the transcript does not include any information to indicate the offenses were committed with separate animus. In addition, Wharton argues that his animus or motivation was to obtain a loan with the victim's identification. Lastly, Wharton contends that the State could have indicted him on multiple counts of identity theft and multiple counts of telecommunications fraud for each of the separate occurrences alleged by the State at sentencing. Wharton argues that the facts before the trial court only encompass one count of identity theft and one count of telecommunications fraud based on criminal activity that occurred from January 1, 2014 to March 31, 2014.

{¶ 14} On the other hand, the State claims that the trial court properly determined the merger issue. The State asserts that Wharton committed multiple offenses of telecommunications fraud and identity fraud over the period from January 1, 2014 through March 31, 2014. The State

maintains that the indictment contemplated multiple events as it did not contain a date of one transaction. The victim, Ernest Stewart, expressed anxiety over the multiple calls from the loan companies. The State urges this court to concur with the Eleventh District Court of Appeals which affirmed a consecutive sentence for telecommunications fraud and identity fraud in *State v. Haney*, 11th Dist. Lake No. 2012–L–098, 2013- Ohio-2823.

{¶ 15} "An appellate court should apply a de novo standard of review in reviewing a trial court's R.C. 2941.25 merger determination." *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 28. " '[T]he appellate court must * * * independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.' " *Id.* at ¶ 26, quoting *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. The reviewing court owes no deference to the trial court's application of the law to the particular facts of the case being reviewed. *Id*.

{¶ 16} R.C. 2941.25, Ohio's multiple counts statute, provides:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 17} The statute codifies the protections of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, and Section 10, Article I of the Ohio Constitution,

which prohibits the imposition of multiple punishments for the same offense. *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 23. In other words, upon finding one or more counts to constitute two or more allied offenses of similar import, R.C. 2941.25(A) requires that the convictions be merged for the purposes of sentencing and that the defendant only be sentenced on one of the counts. *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, ¶ 5.

{¶ 18} The Ohio Supreme Court has interpreted R.C. 2941.25 to involve a two-step analysis for determining whether offenses are subject to merger. *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061. Under step one, it must be determined whether "it is possible to commit one offense *and* commit the other with the same conduct, not whether it is possible to commit one *without* committing the other." (Emphasis sic.) *Id*. at ¶ 48. Put another way, if the conduct of the defendant constituting commission of offense one also constitutes commission of offense two, then the offenses are of similar import and the court must proceed to the second step. *Id*. Under step two of the analysis, it must be determined whether the offenses were committed as part of a single act, with a single state of mind. *Id*. at ¶ 49. If both steps of the analysis are met, then the offenses are allied offenses of similar import and will be merged. *Id*. at ¶ 50. On the other hand, if commission of one offense will never result in the commission of the other, or if the offenses are committed separately, or with a separate animus for each offense, then under R.C. 2941.25(B), the offenses will not merge. *Id*. at ¶ 51.

{¶ 19} Recently, in *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, the Ohio Supreme Court provided courts with further guidance with respect to the R.C. 2941.25 merger determination. Although the Supreme Court did not explicitly overrule *Johnson,* it stated that the "decision in *Johnson* was incomplete" and that *Johnson's* syllabus language "does not

offer the complete analysis necessary to determine whether offenses are subject to merger rather than multiple convictions and cumulative punishment." *Id.* at ¶ 16. Thus, the Court set forth as follows:

> When the defendant's conduct constitutes a single offense, the defendant may be convicted and punished only for that offense. When the conduct supports more than one offense, however, a court must conduct an analysis of allied offenses of similar import to determine whether the offenses merge or whether the defendant may be convicted of separate offenses. R.C. 2941.25(B).
>
> A trial court and the reviewing court on appeal when considering whether there are allied offenses that merge into a single conviction under R.C. 2941.25(A) must first take into account the conduct of the defendant. In other words, how were the offenses committed? If any of the following is true, the offenses cannot merge and the defendant may be convicted and sentenced for multiple offenses: (1) the offenses are dissimilar in import or significance—in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation.
>
> At its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct. The evidence at trial or during a plea or sentencing hearing will reveal whether the offenses have similar import. When a defendant's conduct victimizes more than one person, the harm

for each person is separate and distinct, and therefore, the defendant can be convicted of multiple counts. Also, a defendant's conduct that constitutes two or more offenses against a single victim can support multiple convictions if the harm that results from each offense is separate and identifiable from the harm of the other offense. We therefore hold that two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.

* * *

Rather than compare the elements of two offenses to determine whether they are allied offenses of similar import, the analysis must focus on the defendant's conduct to determine whether one or more convictions may result, because an offense may be committed in a variety of ways and the offenses committed may have different import. No bright-line rule can govern every situation.

As a practical matter, when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when the defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered.

*Id.* at ¶¶ 24-26, 30-31.

{¶ 20} Both the *Thompson* case cited by Wharton and the *Haney* case cited by the State were decided prior to *Ruff*. Therefore, although we appreciate the holdings and reasoning of our sister appellate districts, neither case is controlling authority. We will thus proceed with the analysis set forth in *Ruff*.

{¶ 21} The Ohio Supreme Court in *Ruff* lists three questions for a reviewing court to ask when a defendant's conduct supports multiple offenses in order to determine whether those offenses are allied offenses of similar import within the meaning of R.C. 2941.25: (1) Were the offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? If one of the questions is answered affirmatively, then separate convictions are permitted. The conduct, the animus, and the import must all be considered.

{¶ 22} With respect to the first question, as explained in *Ruff,* offenses are of dissimilar import "when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id.* at paragraph two of the syllabus. When applying the *Ruff* test, we look at the conduct of the defendant in the context of the statutory elements. *See State v. Bailey*, 1st Dist. Hamilton No. C-140129, 2015-Ohio-2997, ¶ 82. Here, Wharton was indicted for telecommunications fraud and identity fraud. The relevant telecommunications fraud statute, R.C. 2913.05(A), provides that:

> No person, having devised a scheme to defraud, shall knowingly disseminate, transmit, or cause to be disseminated or transmitted by means of a wire, radio, satellite, telecommunication, telecommunications device, or telecommunications service any writing, data, sign, signal, picture, sound, or image with purpose to execute or otherwise further the scheme to defraud.

Likewise, the relevant identity fraud statute, R.C. 2913.49(B)(1) provides that: "No person, without the express or implied consent of the other person, shall use, obtain, or possess any personal identifying information of another person with intent to * * * [h]old the person out to be the other person[.]"

{¶ 23} When examining whether Wharton's conduct constituted offenses involving separate victims, the State concedes that there was a single victim, Ernest Stewart. The transcript reveals:

[TRIAL COURT:] Different victim?

[ASSISTANT PROSECUTOR:] No. Same victim.

Therefore, the answer to whether Wharton's conduct constituted offenses involving separate victims is "no". We must proceed with our inquiry.

{¶ 24} The next factor that we analyze is whether the harm that results from each offense is separate and identifiable. A statement of facts was not made a part of the record during the plea hearing or during the sentencing hearing. Wharton did not testify with respect to the merger issue. Only arguments of counsel were presented to the trial court. In response to the trial court's inquiry regarding restitution, the State asserted: "The only thing the victim noted was the anxiety over getting the repeated phone calls from the credit companies." The trial court did not order restitution, because apparently, Wharton was unable to actually obtain any loans using the victim's identity. Our answer to whether the harm from each offense is separate and identifiable is "no". Since the answers to whether there were separate victims and whether the harm from each offense was separate and identifiable were, "no", the answer to the first question of "Were the offenses dissimilar in import or significance?" is also "no".

{¶ 25} We will continue our analysis with the second question presented by *Ruff*: "Were [the offenses] committed separately?" *Ruff* at ¶ 31. Even though we are reviewing the merger issue de novo, we are still limited to reviewing that which is presented to us in the record. "[T]he burden is on the defendant to establish his entitlement to merger." *State v. Jones*, 7th Dist. Mahoning No. 12 MA 181, 2014 -Ohio- 5915, ¶ 69, citing *State v. Washington,* 137 Ohio St.3d 427, 2013-Ohio- 4982, 999 N.E.2d 661, ¶¶ 17–18. The Ohio Supreme Court stated in *Washington*, at ¶ 18:

> Merger is a sentencing question, not an additional burden of proof shouldered by the state at trial. We have consistently recognized that "[t]he defendant bears the burden of establishing his entitlement to the protection, provided by R.C. 2941.25, against multiple punishments for a single criminal act." *State v. Mughni,* 33 Ohio St.3d 65, 67, 514 N.E.2d 870 (1987); *see also Logan,* 60 Ohio St.2d at 128, 397 N.E.2d 1345 ("the defendant * * * must show that the prosecution has relied upon the same conduct to support both offenses charged"); *Cooper* at ¶ 20 ("an offender must demonstrate the state's reliance on the same conduct to prove multiple charges before gaining the protection of R.C. 2941.25").

{¶ 26} The indictment alleged two counts against Wharton:

> Count I: [B]eginning on or about the 1st day of January, 2014 and continuing through the 31st day of March, 2014, in Hocking County, Ohio, Michael J. Wharton, having devised a scheme to defraud, did knowingly disseminate, transmit or cause to be disseminated or transmitted by means of a wire, radio, satellite, telecommunication, telecommunications device, or telecommunication service any writing, data, sign, signal, picture, sound or image with purpose to

execute or otherwise further the scheme to defraud, in violation of Ohio Revised Code, Titled Telecommunications Fraud, ORC Section 2913.05(A), a Fifth Degree Felony, and against the peace and dignity of the State of Ohio.

Count II: [B]eginning on or about the 1st day of January, 2014 and continuing through the 31st day of March, 2014, in Hocking County, Ohio, Michael J. Wharton, without the express or implied consent of the other person, did, knowingly use, obtain, or possess any personal identifying information of another person with the intent to hold the person out to be the other person, in violation of Ohio Revised Code, Titled Identity Fraud, ORC Section 2913.49(B)(1), a Fifth Degree Felony, and against the peace and dignity of the State of Ohio.

In addition, during the change of plea hearing, the trial court went through the following colloquy with Wharton:

* * *

[TRIAL COURT:] All right. Do you understand the allegations contained in the indictment?

[WHARTON:] Yes, Your Honor.

[TRIAL COURT:] Did you and your attorney review the charges that you are pleading guilty to?

[WHARTON:] Yes, Your Honor.

[TRIAL COURT:] All right. Do you have any questions about any of the elements of the offenses you are pleading guilty to?

[WHARTON:] No, Your Honor.

[TRIAL COURT:] Do you understand that if you plead guilty to these offenses

you are making a complete admission that you committed the allegations

contained in the indictment?

[WHARTON:] Yes, Your Honor.

* * *

{¶ 27} Here, Wharton admitted to the allegations in the indictment by pleading guilty to the offenses. The State argues that Wharton applied for three or four different loans using the victim Ernest Stewart's identity. Although there was only one count of telecommunications fraud and one count of identity fraud in the indictment, the State contends that there were three or four separate incidents where Wharton used the victim's information. Wharton asserts that the State could have indicted him on multiple counts of identity theft and multiple counts of telecommunications fraud for each of the separate occurrences. Wharton argues that the facts before the trial court only encompass one count of identity theft and one count of telecommunications fraud based on criminal activity that occurred from January 1, 2014 to March 31, 2014, and thus should merge. However, Wharton failed to request a bill of particulars to force the state to set forth specific dates and/or specific incidents; thus, the record is devoid of a bill of particulars. The record also demonstrates no objection from Wharton regarding the form of the indictment. "Failure to object waives most errors." *State v. Crothers*, 4th Dist. Scioto No. 1351, 1982 WL 3550, * 1 (Oct. 4, 1982). We refuse to address any arguments about lack of differentiation of specific events applicable to each charge. *See State v. Shaw*, 2nd Dist. Montgomery No. 21880, 2008-Ohio-1317.

{¶ 28} Wharton acknowledges that "[t]his was the case of taking an identity and using that identity for the purpose of making credit *applications*." (Emphasis added.) In addition, even

Wharton's sentencing memorandum admits that he "used the victim's name, date of birth, phone number, and social security number to apply electronically for several personal loans and an auto loan." Thus, since both counts encompass time frames from the 1st day of January, 2014 and continuing through the 31st day of March, 2014, the telecommunications fraud could have stemmed from loan "x" for which Wharton applied while the identity fraud could have stemmed from loan "y" for which Wharton applied. Wharton bears the burden of establishing his entitlement to merger. *Washington*, *supra* at ¶ 18. No evidence is in the record showing that the telecommunications fraud and the identity fraud stem from the same loan transaction. Wharton admitted the allegations of the indictment by pleading guilty to the charges. Therefore, Wharton is unable to demonstrate that the offenses were not committed separately. Our answer to the second question, "Were the offenses committed separately?" is "yes".

{¶ 29} We end our analysis at this point since the answer to the second question was answered in the affirmative. When applying the test set forth in *Ruff*, we must hold that the offense of telecommunications fraud and the offense of identity fraud in this particular case were committed separately and do not merge.  Separate convictions and sentences are thus permitted under R.C. 2941.25.

{¶ 30} Accordingly, we overrule Wharton's sole assignment of error with respect to the merger issue.

### B. Sentence Contrary to Law

{¶ 31} After reviewing the record, it appears that the trial court imposed a sentence that is contrary to law. Even though appellate counsel did not assign error to the actual sentence, we will *sua sponte* review Wharton's sentence because an obvious defect exists in the trial court's sentence. We have previously stated:

Normally, we would only consider issues that were raised on appeal; nonetheless, we have discretion to *sua sponte* notice plain error. *State v. Durr,* 4th Dist. Scioto No. 11 CA3411, 2012–Ohio–4691, ¶ 26 *(sua sponte* recognizing plain error when trial court incorrectly stated that portion of offender's sentence was mandatory); *State v. Lee,* 4th Dist. Pickaway No. 10CA12, 2010–Ohio–6450, ¶ 19, quoting *State v. Slagle,* 65 Ohio St.3d 597, 604, 605 N.E.2d 916 (1992) (observing that Crim.R. 52 "allows the appellate court, at the request of appellate counsel or *sua sponte,* to consider a trial error that was not objected to when that error was a 'plain error' ").

As we already stated, for a reviewing court to find plain error (1) there must be an error, *i.e.,* "a deviation from a legal rule," (2) the error must be plain, *i.e.,* "an 'obvious' defect in the trial proceedings," and (3) the error must have affected "substantial rights," *i.e.,* it "must have affected the outcome of the trial." *Barnes,* 94 Ohio St.3d at 27, 759 N.E.2d 1240.

\* \* \*

*State v. Clay*, 4th Dist. Lawrence No. 11CA23, 2013-Ohio-4649, ¶¶ 74-75.

{¶ 32} With the requirements set forth above regarding plain error, we first must examine whether a deviation from a legal rule exists here. In *State v. Vlad,* 153 Ohio App.3d 74, 2003-Ohio-2930, 790 N.E.2d 1246, ¶ 16 (7th Dist.), the Seventh District Court of Appeals explained that it does not comport with current felony sentencing statutes when a trial court imposes both a prison term and community control sanctions at the same time. In another case, the Seventh District Court of Appeals noted:

Ohio's felony sentencing statutes were completely revised by Am.Sub.S.B. No. 2, effective July 1, 1996. Previous to Am.Sub.S.B. No. 2, it was a regular practice in felony sentencing to impose a prison sentence, suspend the sentence, and then impose terms of probation. That option was by and large removed by the felony sentencing statutes adopted as part of S.B. 2. The current felony sentencing statutes, contained primarily in R.C. 2929.11 to 2929.19, require a judge either to impose a prison term or impose community-control sanctions. The current statutes attempt to prevent the courts from combining the two options.

*State v. Baker,* 152 Ohio App.3d 138, 2002-Ohio-7295, 787 N.E.2d 17, ¶ 12 (7th Dist.). "When a court imposes community control sanctions, the sanctions are directly imposed on the defendant and do not follow as a consequence of a suspended prison sentence. R.C. 2929.15(A)." *Vlad* at ¶ 16. "Since 1996, trial courts need to decide which sentence is most appropriate—prison or community control sanctions—and impose whichever option is deemed to be necessary." *Id*.

{¶ 33} In the case sub judice, the trial court imposed sentences of twelve months each on the offense of telecommunications fraud and the offense of identity fraud. The trial court ordered the sentences to run consecutive to each other; and then the trial court ordered that the sentences were suspended and placed Wharton on community control under the supervision of the Adult Parole Authority for a term of five (5) years. In other words, the trial court imposed both a prison sentence and community control for the same offenses. We find that Wharton's sentence clearly deviates from a legal rule; and the error is obvious from reviewing the record.

{¶ 34} As far as whether the error affected Wharton's substantial rights, "[t]he Supreme Court of Ohio has declared, '[j]udges have no inherent power to create sentences * * * [and lack] the authority to impose a sentence that is contrary to law.' " *Clay*, 2013-Ohio-4649, at ¶ 76,

citing *State v. Fischer,* 128 Ohio St.3d 92, 2010–Ohio–6238, 942 N.E.2d 332, ¶¶ 22–23. "[J]udges are duty-bound to apply sentencing laws as they are written." *Fischer* at ¶ 22. We find that since the trial court imposed a sentence which is contrary to law, the sentencing error did affect Wharton's substantial rights.

{¶ 35} All three requirements have been met in order to find plain error. Therefore, we find that the trial court committed plain error by sentencing Wharton to both prison sentences and community control for the same offenses.[2] We find Wharton's sentence is contrary to law. Consequently, we vacate Wharton's sentence.

### IV. CONCLUSION

{¶ 36} Although we overruled Wharton's sole assignment of error relating to the merger issue, we must reverse the judgment of the trial court due to the fact that the sentence is contrary to law. We vacate the sentence, and remand the case for resentencing for the trial court to decide which sentence is most appropriate—prison or community control sanctions—and impose whichever option is deemed to be necessary.

                                JUDGMENT REVERSED AND CAUSE REMANDED.

---

[2] Even if we were to review Wharton's sentence under the standard of review of felony sentences under R.C. 2953.08(G)(2), we would also find that Wharton's sentence is contrary to law.

**JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS REVERSED AND CAUSE IS REMANDED. The appellant and the appellee shall equally divide the costs herein taxed.

The Court finds that reasonable grounds for this appeal existed.

It is ordered that a special mandate issue out of this Court directing the Hocking County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty (60) days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty (60) day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five (45) day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to the expiration of sixty (60) days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J. and Abele, J.: Concur in Judgment and Opinion.

For the Court

By:_____
            Marie Hoover
            Presiding Judge

**NOTICE TO COUNSEL**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.